Mercer David GRAYSON, Ronald L. Braley, Tony M. Arrington, Kenneth C. Bell, Edward J. Kondrad, James T. Mixon, David L. Navickas, Ricky D. Sallee, James L. Steadman, Mitchell B. Taper, and John D. Thompson, Plaintiffs,

v.

K-MART CORPORATION, Defendant.

Civ. No. 1:92–cv–141–JEC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 22, 1994.

Carl H. Hodges, Morrow, GA, Daniel M. Klein, James L. Ford, Atlanta, GA, James J. Dalton, II, Morrow, GA, for plaintiffs.

James H. Coil, III, Walter E. Johnson, Atlanta, GA, for defendant.

## ORDER

CARNES, District Judge.

This case is presently before the Court on defendant's Motions for Partial Summary Judgment [54–1, 55–1, 56–1, 57–1, 58–1, 59–1, 60–1, 61–1, 62–1, 63–1, 64–1], defendant's Motion for Severance of each plaintiff's case [65–1], defendant's Motion for Severance of state and federal claims [65–3], defendant's Motion to Strike [99–1], and defendant's Motion to Strike [105–1]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant's motions should be granted in part and denied in part without prejudice to be refiled, as appropriate, within thirty (30) days of this order.

## BACKGROUND

The eleven plaintiffs in this case are former store managers of defendant K Mart Corporation ("K Mart") who are, or were, employed in defendant's stores located in Alabama, Florida, Georgia, and North Carolina. Each plaintiff seeks relief for alleged age discrimination, pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"). Each plaintiff also seeks relief for common law intentional infliction of emotional distress, pursuant to the applicable law of each plaintiff's home state.

Plaintiffs have alleged that each plaintiff was demoted by defendant due to the respective plaintiff's ages at the time of their demotions. In support of their claim, plaintiffs point to evidence they believe indicates that each plaintiff was subjected to such adverse action as part of a "pattern and practice" of illegal treatment of K Mart's older employees at all levels. All the plaintiffs were over forty years of age at the time of the demotions and, thus, protected by the ADEA. Notwithstanding plaintiffs' allegations, defendant alleges that the employment decisions made regarding each plaintiff were made based upon the individual circumstances of each plaintiff's employment record and job performance. Plaintiffs, in turn, cite to evidence which tends to indicate that defendant's stated reasons for each employment decision are mere pretext.

Although the Complaint purported to include the claims of each of the eleven plaintiffs "and other similarly situated persons," (Compl. at ¶ 92), it was not brought as a class action, and plaintiffs have made no effort to seek representative status or to certify any proposed class. Prior to bringing the instant action, each plaintiff filed an individual complaint with the Equal Employment Opportunity Commission office in his respective state. At the time of the adverse employment actions complained of, pursuant to K Mart's management structure, each plaintiff reported to a district manager and regional manager located in each plaintiff's home state.[1] Each regional manager in turn reported to John Valenti in Troy, Michigan, who was in charge of the operations of some eight hundred K Mart stores in the Southern states.

## DISCUSSION

### I. *Introduction.*

Defendant has moved the Court to sever the claims of the various plaintiffs in this case, pursuant to FED.R.CIV.P. 21 and 42(b) ("Rule 21" and "Rule 42(b)"). Defendant argues that plaintiffs' cases were improperly joined and that defendant is entitled to have the claims severed under Rule 21 and, in the alternative, that, even if plaintiffs cases are properly joined, sufficient reason exists to sever each plaintiff's case for trial under Rule 42(b). Plaintiffs argue in response that joinder was proper under FED.R.CIV.P. 20 ("Rule 20") because their claims arose out a common "transaction, occurrence, or series of transactions or occurrences" and because there are "questions of law or fact common to all" the plaintiffs. *Id.* Plaintiffs further argue that any prejudice or confusion that may exist, due to their decision to join their claims under Rule 20, can be eliminated through proper instruction to the jury, thus eliminating any justification to sever under Rule 42(b). For the reasons discussed below, the Court concludes that, under the circumstances of these cases, defendant has presented the better argument and that defendant's motion to sever should be granted on either of its proposed alternative grounds.

### II. *Misjoinder.*

In order for plaintiffs' cases to be properly joined, they must satisfy the prerequisites of FED.R.CIV.P. 20(a) ("Rule 20(a)"). "The rule states two requirements for proper joinder: (1) there must be a right to relief arising out of the same transaction occurrence or series of transactions or occurrences; and (2) there must be a question of law or fact common to all of the plaintiffs which will arise in the action. Both these requirements must be satisfied." *Smith v. North Am. Rockwell Corp.,* 50 F.R.D. 515, 522 (N.D.Okla.1970) (hereinafter *"Rockwell"*). "In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued. No hard and fast rules have been established under the rule." *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir.1974) (citation omitted). The Court finds, based upon the factual situation presented by these cases, that plaintiffs' cases satisfy neither requirement for joinder under Rule 20(a) and, thus, that their claims have been misjoined.

### A. *Common Transaction or Occurrence.*

Defendant argues that plaintiffs' cases arise from distinct and unrelated employment actions taken by various management employees in the course of their job responsibilities. Accordingly, under defendant's theory of the cases, each adverse employment decision was a separate transaction or occurrence, not part of some unified series of transactions or occurrences, and not amenable to joinder under Rule 20(a). Plaintiffs argue vigorously that their pattern and practice evidence establishes that each plaintiff's demotion was part of an organized course of conduct by K Mart and, thus, that each demotion was but one transaction or occurrence within a common series of transactions or occurrences. Under plaintiffs' theory of their respective cases, the first prong of Rule 20(a) has been satisfied. While the Court

---

1. Although plaintiff Thompson worked at a store located in Alabama at the time of the acts complained of, he reported to a Regional Manager located in Atlanta, Georgia.

finds the facts of these cases to present a somewhat close question, it concludes that the "common transaction or occurrence" requirement of Rule 20(a) has not been satisfied.

■ In support of their theory of the cases, plaintiffs have directed the Court's attention to evidence they believe establishes the common transaction requirement under Rule 20(a). This evidence may be categorized into three general types: (1) evidence of motive to discriminate against older employees; (2) anecdotal evidence of age bias within defendant's organization; and (3) statistical evidence of age bias. Plaintiffs paint the picture of a hostile corporate culture for older store managers. Plaintiffs have not, however, directed this Court's attention to any discrete program or procedure employed by K Mart that affected each of the plaintiffs in this litigation.[2] Absent some causal link between a common and identifiable wrongful act on the part of the defendant and the adverse action taken with respect to each plaintiff, the first prong of Rule 20(a) is not satisfied.

Plaintiffs' "motive" evidence relates to defendant's admitted need to improve its profitability during the same time period within which plaintiffs were demoted. Plaintiffs combine evidence that defendant was seeking to improve its profitability and evidence that older employees, on average, made higher salaries to arrive at the purported motive to act more harshly with respect to older employees. Plaintiffs allege that K Mart's demands of improved profitability put increased pressure on regional, district, and store managers to cut costs in order to improve profits. Plaintiffs assert that the need to cut costs caused these managers to make employment decisions based upon the relative costs of retaining one employee over another. In making this argument, however, plaintiffs ignore the fact that each employment decision was made by different managers within the company. The fact that all these managers may have been feeling the same pressure to improve profitability does not mean that all these decisions constitute one unified transaction or occurrence or series thereof.

The anecdotal evidence of discrimination consists of statements made by various K Mart managers at all levels, which plaintiffs assert establishes the existence of a company-wide policy of age bias. Plaintiffs rely in part on public statements made by defendant's chairman, Joseph Antonini, regarding the company's "renewal" and regarding the relatively young age of K Mart's management team to support the existence of such a policy. Plaintiffs also present the anecdotal testimony of various present and former K Mart employees recounting conversations they have had with managers at various levels in which pejorative or derogatory statements were made regarding the age and job performance of other K Mart employees. Assuming, without deciding, that plaintiffs' evidence establishes a general hostility toward older employees, the Court fails to see how such hostility transforms the decisions of the various managers with respect to each of the plaintiffs into one logical transaction or occurrence.

Plaintiffs' reliance on defendant's alleged general bias toward store managers over forty to support joinder of their cases is misplaced, as "litigation of even any purported general policy of defendant, as it might affect each plaintiff here, would inevitably focus in detail on the separate work histories of each plaintiff." *Rockwell*, 50 F.R.D. at 522; *see also Weir v. Litton Bionetics, Inc.*, 41 Fair Empl.Prac.Cas. (BNA) 1150, 1986 WL 11608 (D.Md.1986) (accord). The instant cases involve eleven individuals who live in four states. Each plaintiff worked in a different store, geographically remote from the other

---

**2.** Plaintiffs have alleged that a "20–40–60 Club" exists at K Mart. As plaintiffs describe this "club," it includes managers who have been with K Mart for approximately twenty years, who are approximately forty years of age, and who make approximately sixty thousand dollars per year. Plaintiffs' only evidence of the existence of this "club" is testimony by various employees, many of whom have claimed that K Mart discriminated against them because of their age and that they believed that employees who satisfied the three criteria were at an enhanced risk of suffering some adverse employment action. Without more, the Court cannot conclude that such a "club" existed, much less that some corporate policy or plan was responsible for its existence.

plaintiffs. The decision to demote each plaintiff originated with his district manager and was derived within the context of the business circumstances of each plaintiff's store. Three different regional managers participated in the eleven demotion decisions at issue in these cases. While all of these decisions may not be completely unrelated, in that they were made during the same time period and in response to the immense competitive pressures being felt by K Mart at the time, they hardly constitute a single action on the part of the defendant.

Plaintiffs make much of defendant's centralized controls to support their theory that each demotion was part of one logical transaction or occurrence. Plaintiffs point to centralized policy-making and review and claim that such control indicates that each plaintiff's local managers did nothing more than blindly implement company policy without exercising any independent judgment. Plaintiffs' assertions are not supported by the record. While the decisions to demote the plaintiffs could not have been implemented without approval by the Southern Regional Vice President, John Valenti, the undisputed evidence establishes that the recommendation to make such a demotion originated with the individual employee's district and regional managers. Taking plaintiffs' reasoning to its logical end, every employment decision made by managers subject to central policies and review would constitute one transaction or occurrence, and any group of aggrieved employees would be entitled to join its claims under Rule 20(a). The Court declines to read the permissive joinder rules so broadly.

Plaintiffs also offer statistical evidence to support their single transaction theory of the case. The Court fails to see, however, how this evidence transforms eleven individual employment decisions into one logical transaction. Primarily, plaintiffs seek to use their statistical evidence in order to create an inference of discrimination. Plaintiffs do not seek to use the evidence in order to establish their cases using a disparate impact theory; rather, they seek to use it as evidence of defendant's intent to discriminate against older employees. While such evidence possibly may be used by each of the plaintiffs to establish intent with respect to the adverse action taken against them, it seems ill-suited for satisfying the single transaction requirement of Rule 20(a). Thus, the Court concludes that plaintiffs' cases do not constitute one logical transaction or occurrence for purposes of Rule 20(a).

### B. *Common Question of Law or Fact.*

■ The Court further finds that no common question of law or fact exists between the plaintiffs' cases, within the meaning of Rule 20(a). "It is, of course, true that plaintiffs have alleged against defendant claims based upon the same general theories of law, but this is not sufficient." *Rockwell,* 50 F.R.D. at 524; *see also Anderson v. Phelps,* 655 F.Supp. 560 (M.D.La.1985) (accord); *Martinez v. Safeway Stores, Inc.,* 66 F.R.D. 446, 449 (N.D.Cal.1975) (accord). As detailed previously, each demotion decision affecting the plaintiffs in these cases was a discrete act by the defendant. "As indicated, the factual and legal questions between the plaintiffs and the defendant are based upon the wholly separate acts of the defendant with respect to each plaintiff. There is consequently a complete lack of common questions of fact or law, the second element required by Rule 20(a), and the action[s] must be severed on this ground as well." *Id.*

### III. *Separate Trials under Rule 42(b).*

■ Defendant has argued, alternatively, that even if plaintiffs' cases were properly joined under Rule 20(a), it would be highly prejudicial to defendant for all the plaintiffs' cases to be presented to one jury. Plaintiffs argue that no undue prejudice to defendant exists, but that each plaintiff's case would be "prejudiced" by having to present evidence common to every case multiple times and because each plaintiff's case will appear more isolated to the juries hearing their cases. For the reasons below, the Court concludes that it would be improper to conduct what essentially constitutes eleven mini-trials at once and that, even if plaintiffs' cases were properly joined, the extreme prejudice defendant would suffer from a joint trial warrants severance.

Rule 42(b) provides in pertinent part:

Separate Trials. The court, in furtherance of convenience *or to avoid prejudice,* ... may order a separate trial of *any claim,* cross-claim, counterclaim or third-party claim, or of any *separate issue or any number of claims,* cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right to trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

(Emphasis Added). As with determinations under Rule 20(a), "the Court is given broad discretion to decide whether or not" plaintiffs' cases should be tried separately. *Arroyo v. Chardon,* 90 F.R.D. 603, 605 (D.P.R. 1981) (construing the consolidation provisions of FED.R.CIV.P. 42(a)); *see also Bernardi v. Scranton,* 101 F.R.D. 411 (M.D.Pa.1983) (accord). In making its determination, "the trial court must balance the probable savings of time and effort against the likelihood that a party might be prejudiced, inconvenienced or put to extra expense." *Bernardi,* 101 F.R.D. at 413. Having weighed the parties' arguments with respect to convenience, judicial economy, and prejudice, the Court concludes that any possible benefits to be derived from a common trial are more than offset by the confusion to the jury and prejudice to the defendant from proceeding with these cases jointly.

Plaintiffs' primary argument in opposition to defendant's motion is that they will be inconvenienced and prejudiced by severance. Plaintiffs cite the increased expense and inconvenience of presenting essentially identical statistical evidence and expert testimony multiple times should their cases be severed. Likewise, plaintiffs complain about the added expense and inconvenience of presenting highly similar anecdotal evidence of defendant's alleged pattern and practice of discriminating against older employees. As a preliminary matter, the Court notes there are less costly alternatives to presenting live testimony in each trial and would encourage counsel for plaintiffs and defendant to reach a mutually agreeable alternative means for presenting redundant testimony in the various cases. Moreover, even assuming plaintiffs had no alternative to presenting the live testimony of their various witnesses, plaintiffs' convenience alone does not allow this Court to ignore the potential prejudice to defendant by proceeding with a consolidated trial of all the plaintiffs' cases.

Plaintiffs argue vigorously that they would be prejudiced by having to present, and prove, each plaintiff's case individually. Plaintiffs complain that defendant has pursued a litigation strategy to "divide and conquer," by seeking to focus the finder of fact's attention on the merits of each individual plaintiff's case, without the associated confusion of assessing the merits of ten other factual circumstances at the same time. Plaintiffs' argument is greatly misplaced.

Each plaintiff must prove liability on the part of the defendant with respect to the adverse action defendant took with respect to him. It is precisely this need to focus the jury's attention on the merits of each individual plaintiff's case that counsels against proceeding with these cases in one consolidated trial. There is a tremendous danger that one or two plaintiff's unique circumstances could bias the jury against defendant generally, thus, prejudicing defendant with respect to the other plaintiffs' claims. Contrary to plaintiffs' arguments, they are not "prejudiced" by having to prove defendant's liability to each plaintiff individually. The ADEA does not provide a right for one plaintiff to recover because a defendant may have discriminated against another plaintiff of like age.

Plaintiffs also argue that in the interest of judicial economy these cases should continue to be joined for trial. Plaintiffs argue that it would be a gross waste of judicial resources to conduct eleven separate trials when all claims could be dispensed with in one trial. Plaintiffs rely heavily on the common statistical and historical evidence in each of the cases to support their argument. The Court finds plaintiffs' argument regarding judicial economy unpersuasive. Plaintiffs completely ignore the complexities of conducting a trial which involves eleven largely unrelated events. While the logistical inefficiency of conducting such a trial may not completely

offset the inefficiency of having repeated presentation of evidence, the Court concludes, given the other factors which weigh so heavily in favor of separation, that concerns about judicial efficiency do not preclude separation.

In these cases, there are eleven factual situations and eleven sets of witnesses with testimony pertinent to those situations. Moreover, plaintiffs' state law claims arise under the laws of four different states. The resulting confusion and prejudice from the scenario presented by a common trial of all plaintiffs' claims against the defendant would be intolerable. Thus,

> [t]his Court concludes that it would be prejudicial to defendant were the claims of [the plaintiffs] to be tried at the same time. The work history of each plaintiff was quite different, and the claims and defenses of each can be fairly considered only in the light of the separate work history of each.... [P]laintiffs' claims will be tried before a jury, and it is highly likely that confusion will result when the different facts pertaining to these different claims are presented at a single trial. No prejudice can result to each plaintiff if each claim is tried separately, but the same cannot be said insofar as the defendant is concerned. This Court concludes that in view of the different facts which are pertinent to each of these ... claims, defendant would suffer prejudice if the claims were tried together.

*Weir v. Litton Bionetics, Inc.*, 41 Fair Empl. Prac.Cas. 1150, 1155, 1986 WL 11608 (D.Md. 1986) (deciding defendant's motion for severance of two employees' ADEA claims under Rule 21). Accordingly, the Court concludes that defendant's motion for severance should be granted under either Rule 21 or 42(b).

## IV. *Pattern and Practice Evidence and Separate Trials.*

██ In their opposition to severance, plaintiffs argue vigorously that severance would impair their ability to present pattern and practice evidence. To the extent plaintiffs' arguments are oriented toward the cost of presenting such evidence on multiple occasions, the Court has addressed the arguments in its discussion of Rule 42(b). To the extent that plaintiffs' arguments relate to the cumulative impact of having eleven plaintiffs present their cases to one jury and the inferences a jury might draw with respect to the defendant because of the sheer number of plaintiffs, plaintiffs' arguments are ill-advised. While plaintiffs have been critical of defendant's litigation strategy for seeking to sever the cases, it appears to the Court that plaintiffs' own motives for seeking to join their claims are no less self-serving.

Plaintiffs have directed this Court's attention to no authority for the proposition that the number of plaintiffs joined in a lawsuit affects the admissibility of pattern and practice evidence in an employment discrimination context. Such evidence is controlled by the Federal Rules of Evidence regardless of whether each plaintiff's case is tried separately or tried together in one consolidated trial. Thus, plaintiffs' evidence of an alleged pattern and practice of age discrimination is admissible to the extent such evidence is relevant to each plaintiff's case. FED.R.EVID. 401, 402, 403 ("Rules 401, 402, and 403").

While the fact of similar demotions within the same time frame of any plaintiff's particular demotion may be relevant to such plaintiff's case under Rule 401, the "prejudice resulting from permitting each witness, who is the plaintiff in his own lawsuit, to testify about the circumstances of his [demotion, would] substantially outweigh[ ] the probative value of the testimony," under Rule 403. *Moorhouse v. Boeing Co.*, 501 F.Supp. 390, 392 (E.D.Pa.), *aff'd without op.*, 639 F.2d 774 (3d Cir.1980). The prejudice to defendant and confusion to the jury from the presentation of such testimony is the overriding reason plaintiffs' cases must be severed at this juncture. *Id.* Thus, plaintiffs' concerns regarding their ability to present relevant, non-prejudicial, pattern and practice evidence, upon severance of these cases for trial, are unfounded.

## CONCLUSION

For the foregoing reasons, defendant's Motions for Partial Summary Judgment [54–1, 55–1, 56–1, 57–1, 58–1, 59–1, 60–1, 61–1, 62–1, 63–1, 64–1] are **DENIED** without prejudice with leave to refile within thirty (30) days of

this order, defendant's Motion for Severance of each plaintiff's case [65–1] is **GRANTED,** defendant's Motion for Severance of State and Federal claims [65–3] is **DENIED** without prejudice with leave to refile within thirty (30) days of this order, defendant's Motion to Strike [99–1] is **DENIED** as moot, and defendant's Motion to Strike [105–1] is **DENIED** as moot. Defendant may, at its option, adopt its previously filed motions with respect to any motion for which leave has been granted to refile. Defendant must, however, affirmatively notify the Court of such desire within thirty (30) days of this order. Plaintiffs are ordered to limit their responses to any renewed motion(s) for summary judgment that may be filed by the defendant to the facts relevant to each individual case.

Accordingly, the Clerk's Office is directed to establish separate case numbers for each plaintiff's case. Upon establishing new case numbers and files for each plaintiff's case, the Clerk's Office is directed to include each of the following docket entries in each of the plaintiff's files: 1–53, 65–85 [3] and 97–134. The Clerk's Office is further directed to include any docket entry filed after February 8, 1994, and not included in this list, in each of the newly created case files.

The Clerk's Office is directed that plaintiff Grayson's case will be styled *Mercer David Grayson v. K Mart Corporation* and will continue to proceed under the presently assigned case number. In addition to the previously listed entries, the Clerk's Office is directed to include in plaintiff Grayson's case file docket entries: 54 and 96.

The Clerk's Office is directed that plaintiff Braley's case is to be assigned a new case number to be styled *Ronald L. Braley v. K Mart Corporation.* In addition to the previously listed entries, the Clerk's Office is directed to include in plaintiff Braley's case file docket entries: 55 and 95.

The Clerk's Office is directed that plaintiff Arrington's case is to be assigned a new case number to be styled *Tony M. Arrington v. K Mart Corporation.* In addition to the previously listed entries, the Clerk's Office is directed to include in plaintiff Arrington's case file docket entries: 56 and 94.

The Clerk's Office is directed that plaintiff Bell's case is to be assigned a new case number to be styled *Kenneth C. Bell v. K Mart Corporation.* In addition to the previously listed entries, the Clerk's Office is directed to include in plaintiff Bell's case file docket entries: 57 and 93.

The Clerk's Office is directed that plaintiff Kondrad's case is to be assigned a new case number to be styled *Edward J. Kondrad v. K Mart Corporation.* In addition to the previously listed entries, the Clerk's Office is directed to include in plaintiff Kondrad's case file docket entries: 58 and 92.

The Clerk's Office is directed that plaintiff Mixon's case is to be assigned a new case number to be styled *James T. Mixon v. K Mart Corporation.* In addition to the previously listed entries, the Clerk's Office is directed to include in plaintiff Mixon's case file docket entries: 59 and 91.

The Clerk's Office is directed that plaintiff Navickas's case is to be assigned a new case number to be styled *David L. Navickas v. K Mart Corporation.* In addition to the previously listed entries, the Clerk's Office is directed to include in plaintiff Navickas's case file docket entries: 60 and 90.

The Clerk's Office is directed that plaintiff Sallee's case is to be assigned a new case number to be styled *Ricky D. Sallee v. K Mart Corporation.* In addition to the previously listed entries, the Clerk's Office is directed to include in plaintiff Sallee's case file docket entries: 61 and 89.

The Clerk's Office is directed that plaintiff Steadman's case is to be assigned a new case number to be styled *James L. Steadman v. K Mart Corporation.* In addition to the previously listed entries, the Clerk's Office is

---

**3.** Although the Court has directed the Clerk's Office to include docket entry 65 in each plaintiff's case file, defendant's Motion for Change of Venue [65–2] is applicable only to plaintiff Bell's, plaintiff Kondrad's, plaintiff Mixon's, plaintiff Navickas's and plaintiff Taper's cases. Accordingly, only these dockets should reflect that such a motion is pending, once separate case files are established for each plaintiff in this litigation.

directed to include in plaintiff Steadman's case file docket entries: 62 and 88.

The Clerk's Office is directed that plaintiff Taper's case is to be assigned a new case number to be styled *Mitchell B. Taper v. K Mart Corporation.* In addition to the previously listed entries, the Clerk's Office is directed to include in plaintiff Taper's case file docket entries: 63 and 87.

The Clerk's Office is directed that plaintiff Thompson's case is to be assigned a new case number to be styled *John D. Thompson v. K Mart Corporation.* In addition to the previously listed entries, the Clerk's Office is directed to include in plaintiff Thompson's case file docket entries: 64 and 86.

Counsel for all the parties are ordered to supply the Clerk of the Court with a copy of **ALL** of the pleadings necessary for the Clerk's Office to establish the individual files for each plaintiff as prescribed in the conclusion of this order, beginning with the last paragraph on page 17 and continuing through this page. Counsel are directed to supply these copies within **TEN (10) DAYS** of this order. NO EXTENSIONS WILL BE GIVEN. The costs of providing these copies are to be divided equally between the plaintiffs and the defendant.

SO ORDERED, this 18th day of February, 1994.