Anderson HAWKINS and Lawrence Woodfork, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

GROOT INDUSTRIES, INC. and Groot Recycling and Waste Services, Inc., Defendants.

No. 01 C 1731.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 7, 2002.

Uche O. Asonye, Asonye and Associates, Chicago, IL, for plaintiff.

Jeffrey Kenneth Ross, David Elliot Metz, William Francis Dugan, John M. Vande Walle, Seyfarth Shaw, Chicago, IL, for defendants.

### ORDER

GOTTSCHALL, District Judge.

Plaintiffs Anderson Hawkins and Lawrence Woodfork, both African Americans, filed a class action complaint against their former employers, Groot Industries, Inc. ("Groot"), and Groot Recycling and Waste Services, Inc. ("Groot Recycling"), alleging racial and national origin harassment and discrimination in violation of Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981. Now before the court is plaintiffs' motion to amend the complaint, adding Hispanic plaintiffs. For the following reasons, the motion is granted in part and denied in part.

### Background

Both Hawkins and Woodfork filed charges with the EEOC against Groot Recycling. (Compl. Exs. 1–2.) On the pre-printed form, when prompted to indicate the type of discrimination to which they were allegedly subjected, Hawkins checked the "race" and "retaliation" box, while Woodfork checked only the "race" box. (*Id.*) Neither plaintiff checked the "national origin" box. Hawkins's charge claims that "White Drivers repeatedly made derogatory/offensive remarks toward Black Drivers in the presence of Management, without consequence." (Compl. Ex. 1.) He describes further discriminatory treatment, including the fact that he was "discharged, harassed, disciplined/sus-pended, and paid different wages because of my race, Black ...." (*Id.*) He makes no mention of Hispanic employees in his EEOC charge. Woodfork's charge similarly contains no mention of Hispanic employees. In fact, Woodfork claims, among other things, that "[n]on-blacks with less seniority receive better wages than blacks" and "receive better work assignments." (Compl. Ex. 2.)

After an investigation of Hawkins's and Woodfork's charges, the EEOC issued determinations in which it concluded that there was "reasonable cause to believe that [Groot Recycling] discriminated against [plaintiffs], and a class of individuals, in that it harassed them and subjected them to a hostile work environment based on their race and national origin, in violation of Title VII." (Compl. Exs. 3–4 at 1.) This was the first mention of "national origin" harassment in the case, although the EEOC did not define the "class of individuals" that was subjected to such discrimination. The EEOC determinations included no mention of harassment against employees of Hispanic origin. The EEOC issued Notices of Right to Sue to both Hawkins and Woodfork.

In the original complaint, Hawkins and Woodfork claim to bring the case on behalf of a class consisting of "African American persons who have been employed by Defendants in their Chicago area facilities on or after July 5, 1994 and who are subject to Defendants' employment and human resources policies and practices, including but not limited to current former employees, and who have been, continue to be, or may in the future be, adversely affected by Defendants' racially discriminatory policies and practices ...." (Compl. ¶ 10.) They allege two counts on behalf of the class: (I) "a pattern and practice of harassment due to race and national origin and subject[ion of] African Americans and Hispanics to inferior terms and conditions of employment due to their race and national origin" (*id.* ¶ 23); and (II) "a pattern and practice of race discrimination in connection with promotions, work assignments, compensation, transfers, discipline and terms and conditions of employment" (*id.* ¶ 10). Hawkins and Woodfork also include separate claims of racial harassment and discrimina-

tion (Counts III and IV) and retaliation (Counts V and VI), respectively, on behalf of themselves individually.

The 77–paragraph complaint includes one specific factual allegation that mentions Hispanic employees, found in the harassment claim in Count I. In paragraph 28, plaintiffs allege "[t]hat on a daily basis, employees of Hispanic origin were similarly referred to as 'spiks' and 'wetbacks.'" Specific reference to Hispanic employees is absent from the remaining counts.

Plaintiffs now seek to amend the complaint, adding two Hispanic plaintiffs, Enrique Hernandez and Javier Guerrero, as class members and class representatives. The class has changed accordingly, to consist of "all African–American and Hispanic persons who have been employed by Defendants ...." (Am.Compl. ¶ 14.) Neither Hernandez nor Guerrero filed a charge with the EEOC. In Counts I and II of the amended complaint, plaintiffs make the same harassment and discrimination allegations as found in the original complaint, with additions to include Hispanic employees. The only additional specific allegation in Count I is "[t]hat on a daily basis, employees whose national origin is Mexico, were called 'dumb Mexicans' and 'stupid Mexican.'" (*Id.* ¶ 35.)

In Count II, plaintiffs allege generally, among other things, that "African–Americans and Hispanics are paid less that [sic] their white counterparts in the same positions." (*Id.* ¶ 64.) Specifically, plaintiffs allege that Guerrero "was terminated for mixing garbage while similarly-situated white employees routinely engaged in similar conduct and were neither disciplined or [sic] terminated by Defendants." (*Id.* ¶ 59.) Hawkins's and Woodfork's individual harassment and discrimination claims in Counts III and IV remain the same, respectively. Identical harassment and discrimination claims have been added by Hernandez (Count V) and Guerrero (Count VI) individually. Finally, Hawkins's and Woodfork's individual claims of retaliation (Counts VII and VIII) remain. In both versions of the complaint, plaintiffs allege each count as a violation of both Title VII and § 1981.

### Discussion

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that "a party may amend the party's pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." [1] The court may deny a motion for leave to amend "when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal, Inc. v. QVC, Inc.,* 241 F.3d 854, 861 (7th Cir.2001).

Defendants claim that allowing plaintiffs to amend would be futile and would create undue prejudice. Essentially, defendants present three arguments. First, they contend that adding the proposed Hispanic plaintiffs at this point would not comply with the requirements for permissive joinder pursuant to Rule 20(a) of the Federal Rules of Civil Procedure. Second, with respect to the Title VII claims only, they argue that the proposed Hispanic plaintiffs' claims would not survive a motion for summary judgment because neither filed a charge with the EEOC. Finally, with respect to the § 1981 claims, defendants contend that it would be unfair to allow the proposed Hispanic plaintiffs' claims to relate back to the date the African–American plaintiffs filed the original complaint.

### I. Rule 20(a)

■ Rule 20(a) allows permissive joinder of plaintiffs if they assert claims "arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all those persons will arise in the action." Rule 21 authorizes the court to dismiss any misjoined party or claim at any stage of a lawsuit. It appears that defendants argue that allowing plaintiffs to amend their complaint would be futile because the new complaint would be subject to a holding of misjoinder. Misjoinder occurs when parties fail to satisfy

---

1. Defendants have filed an answer in this case; therefore, plaintiffs may not amend "as a matter of course." Fed.R.Civ.P. 15(a).

either of the two requirements set forth in Rule 20(a). *See Bailey v. N. Trust Co.*, 196 F.R.D. 513, 515 (N.D.Ill.2000). First, there must be a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences. Second, there must be a question of law or fact common to all the plaintiffs. *See id.* Federal policy favors joinder, *id.*, and the district court has wide discretion when deciding whether joinder of parties is proper. *Gorence v. Eagle Food Ctrs., Inc.*, No. 93 C 4862, 1996 WL 734955, at *3 (N.D.Ill. Dec. 19, 1996).

■ The amended complaint satisfies both prongs of the test. The complaint alleges a pattern and practice of both harassment and direct discrimination against African Americans and Hispanics. Such allegations of a "system of decision-making" (*Id.* ¶ 15), or widely-held policy of discrimination, constitute a single transaction for Rule 20(a) purposes. *See, e.g., Best v. Orner & Wasserman*, Nos. 92 C 6477, 93 C 2875, 1993 WL 284145 (N.D.Ill. July 27, 1993). Moreover, the allegations refer to discrimination during the same general time period, allege the same type of adverse employment actions, allege the same type of discrimination (race),[2] and appear generally to accuse the same set of supervisors at the same work location, all factors favoring joinder. *Berry v. Ill. Dep't of Human Servs.*, No. 00 C 5538, 2001 WL 111035, at *17 (N.D.Ill. Feb. 2, 2001) (listing factors); *cf. id.* (holding joinder inappropriate where 33 plaintiffs were employed at six different facilities, complained of different types of mistreatment by different supervisors, and alleged different bases for discrimination against them). Finally, the allegations of the African–American and Hispanic plaintiffs involve the same issues of law and fact, such as whether defendants' conduct amounts to a hostile work environment in violation of Title VII or § 1981.

■ The court disagrees with defendants' argument that allowing the amendment would be unduly prejudicial because "some of the evidence relevant to and admissible in [the case of one set of plaintiffs] . . . will not be relevant to or admissible in [the case of the other set of plaintiffs]." *Henderson v. AT & T Corp.*, 918 F.Supp. 1059, 1063 (S.D.Tex.1996). In fact, even if the trial of the African–American plaintiffs' claims were separate from the Hispanic plaintiffs' trial, evidence of defendants' misconduct toward *every* plaintiff (or any other employee, for that matter) would likely be deemed admissible under Federal Rule of Evidence 404(b), so long as that evidence is not used to prove defendants' action in conformity with the wrongdoing, but is used for some other purpose such as proof of intent. For example, evidence of defendants' racial discrimination against Hawkins may be admissible in Guerrero's separate trial to show that defendants intended to discriminate against him. Whether there is one trial or two, all of the evidence of intentional discrimination could well be admissible, and subject perhaps to a limiting instruction. Under these circumstances, there would be no added prejudice by trying the claims together.[3] The court holds that joinder of the two sets of plaintiffs would be proper.

## II. Title VII Claims

■ Plaintiffs bringing a Title VII action in federal court must first file a timely charge of discrimination with the EEOC. *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 763 (7th Cir.2001). Plaintiffs admit that neither Hernandez nor Guerrero filed charges with the EEOC, but they invoke the "single-filing rule" and argue that the Hispanic plaintiffs may rely on the charges filed by Hawkins and Woodfork. They may do so if "the individual claims of the filing and non-

**2.** Courts hold that discrimination against Hispanics constitutes racial discrimination, as well as national origin discrimination. *See, e.g., Ulane v. Eastern Airlines, Inc.*, 581 F.Supp. 821, 823 (N.D.Ill.1983) ("The trend among the Judges of this district has been to consider discrimination against Hispanics as racial discrimination."), *rev'd on other grounds*, 742 F.2d 1081 (7th Cir.1984). Thus, § 1981, which generally only applies to racial discrimination, *Jenkins v.*

*Blue Cross Mut. Hosp. Ins., Inc.*, 522 F.2d 1235, 1240 n. 8 (7th Cir.1975), applies here.

**3.** Severing the cases for trial would be appropriate under Rule 42(b) of the Federal Rules of Civil Procedure if the evidence in one group of claims were not admissible in the other. *See, e.g., Henderson*, 918 F.Supp. at 1063.

filing plaintiffs ... have arisen out of sufficiently similar discriminatory treatment as those claims brought before the EEOC ...." *Toney v. Rosewood Care Ctr., Inc.*, No. 98 C 693, 2001 WL 1105127, at *3 (N.D.Ill. Sept. 20, 2001). "The theory behind the rule is that the policies served by the EEOC charge and right-to-sue letter requirements—to give the employer notice of the grievance and to give both the employer and the EEOC an opportunity to settle disputes short of litigation—may be accomplished without requiring each person with the same grievance to file a charge." *Id.*

In this case, the Hispanic plaintiffs' claims do not arise out of sufficiently similar discriminatory treatment as those allegations found in Hawkins's and Woodfork's EEOC charges. The African–American plaintiffs' EEOC charges alleged only racial harassment and discrimination because they are black. Plaintiff Hawkins also alleged retaliation. Neither plaintiff claimed national origin discrimination, and neither plaintiff mentioned any discrimination against Hispanic employees. In fact, Woodfork's charge complains that "non black" employees received better treatment than he did; this group necessarily includes individuals of Hispanic origin.

This is not the situation addressed by *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.* ("*Jenkins II*"), 538 F.2d 164 (7th Cir.1976), in which the plaintiff alleged both sex and race discrimination in her complaint, but failed to check the "sex" discrimination box in her EEOC charge. The Seventh Circuit held that, despite the omission, the plaintiff's claims in the EEOC charge that her superior "accused me of being a leader of the girls on the floor" and that a "white employee who associated with me might have been denied her promotion because of her association with me" actually charged sex discrimination. *Id.* at 169. In this case, even liberally construing Hawkins's and Woodfork's charges, the court cannot interpret them to charge racial or national origin discrimination against Hispanic employees. Furthermore, the EEOC's determinations that defendants harassed and discriminated against a class of individuals based on race and national origin

made no mention of Hispanic employees as potential victims. Judging from the parties' pleadings, it appears that the first mention of discrimination against Hispanic employees appeared in plaintiffs' original complaint. Defendants could not have been put on notice by the EEOC charges that they might be subject to Title VII claims by Hispanic employees.

Plaintiffs rely on *Orlowski v. Dominick's Finer Foods, Inc.*, 937 F.Supp. 723, 734 (N.D.Ill.1996), for the proposition that "the proposed Plaintiffs may properly rely on the charges of the original Plaintiffs." (Pls.' Reply at 3.) *Orlowski* is distinguishable. In that case, female plaintiffs brought a class action against Dominick's Finer Foods, Inc. "on behalf of all female employees of Dominick's, and made this class allegation in each of their EEOC charges." *Orlowski*, 937 F.Supp. at 734. The "proposed" plaintiffs were female employees, just like the "original" plaintiffs. The court had little trouble holding that the proposed additional plaintiffs' claim arose from sufficiently similar discriminatory treatment as the original plaintiffs, and thus their failure to timely file EEOC charges did not undermine their case. In this case, the "proposed" plaintiffs are not members of the "original" class—African-American employees—but are of Hispanic origin. Plaintiff's motion to amend is denied with respect to all of Guerrero's and Hernandez's Title VII claims, including both the class action (Counts I and II) and individual (Counts VII and VIII) counts.

### III. Section 1981 Claims

The Seventh Circuit has held that § 1981 is available to a plaintiff "regardless of whether one has pursued his Title VII administrative remedies." *Jenkins II*, 538 F.2d at 166. Defendants argue, however, that "it would be unfair to Groot to allow the proposed Hispanic plaintiffs' § 1981 claims to relate back to the date the African–American plaintiffs filed this action—March 12, 2001." (Defs.' Resp. at 6.) Section 1981 plaintiffs in Illinois are subject to a two-year limitations period. *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 807 (7th Cir.1999). Defendants argue that until plaintiffs filed their

motion to amend on December 5, 2001, neither Hernandez nor Guerrero had brought any discrimination claim against defendants and no other Hispanic person had been proposed as a plaintiff. Defendants ask the court to deny plaintiffs' motion to amend and allow Guerrero and Hernandez to file a separate § 1981 complaint, "using the date of that complaint as the date for calculating the statute of limitations." (*Id.* at 7.) The court declines defendants' request.

■ "Under the relation-back doctrine, an amended complaint is deemed filed on the date the original complaint was filed for the purpose of tolling the statute of limitations." *Moore v. Allstate Ins. Co.*, 928 F.Supp. 744, 752 (N.D.Ill.1996). Rule 15(c)(2) provides that an "amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ...." "The main consideration is whether the general fact situation provided the defendant with adequate notice of the new matters alleged in the amendment." *Commonwealth Fin. Corp. v. USAmeribancs, Inc.*, No. 86 C 6181, 1987 WL 19142, at *3 (N.D.Ill. Oct. 20, 1987).

■ Courts in this district have applied a four-factor inquiry when determining whether the addition of claims by new plaintiffs relate back. *Olech v. Village of Willowbrook*, 138 F.Supp.2d 1036, 1044 (N.D.Ill.2000). The factors favor relation back where (1) the new plaintiff's claim arose out of the "same conduct, transaction or occurrence" set forth in the original complaint; (2) the new plaintiff shares an "identity of interest" with the original plaintiff; (3) the defendants have "fair notice" of the new plaintiff's claim; and (4) the addition of the new plaintiff will not cause the defendants prejudice. *Id.* There appears to be much overlap between these factors. *See id.* The most important question is whether the original complaint places the defendant "on notice that it might be required to defend its employment practices from charges of class-based discrimination." *Paskuly v. Marshall Field & Co.*, 646 F.2d 1210, 1211 (7th Cir.1981).

■ In this case, Hernandez's and Guerrero's class action claims of race discrimination and harassment (Counts I and II) relate back to the original complaint. In the original complaint, there is only one specific reference to discrimination against Hispanics. However, elsewhere the complaint alleges that "Defendants engage in a pattern and practice of harassment due to race and national origin and subjected African Americans and Hispanics to inferior terms and conditions of employment due to their race and national origin." (Compl. ¶ 23.) In addition, the original complaint alleges "a pattern and practice of race discrimination against African Americans and persons of Hispanic origin in connection with work assignments, compensation, transfers, promotions and discipline." (*Id.* ¶ 9.) Furthermore, there are numerous allegations of harassment and discrimination against African Americans and "other minorities." (*Id.* ¶¶ 29, 37, 38, 40–42, 63.)

It is clear that the Hispanic plaintiffs' claims arose out of the same alleged conduct as found in the African–American plaintiffs' original complaint—a pattern and practice of harassment and discrimination against both black and Hispanic employees. Each set of plaintiffs share an "identity of interests" because they are the alleged victims of the same type of conduct. *See Olech*, 138 F.Supp.2d at 1045 n. 5. Moreover, the allegations in the original complaint are sufficient to put defendants on "fair notice" of race and national origin claims by Hispanic plaintiffs. Finally, besides defendants' objection to having a jury hear evidence of discrimination against both Hispanic and black employees (which the court rejects, *see supra*), they make no argument of unfair prejudice. The court holds that the addition of Hispanic plaintiffs to the class relates back to the original complaint. Hernandez's and Guerrero's individual claims of harassment and discrimination also relate back, for the same reasons cited above. Therefore, plaintiffs' motion to amend is granted with respect to all claims pursuant to § 1981.

### Conclusion

For the foregoing reasons, plaintiffs' motion to amend their complaint is granted in

part and denied in part. Plaintiffs may add Guerrero and Hernandez as plaintiffs and redefine the class to include Hispanic employees with respect to the § 1981 claims. However, plaintiffs may not add any Hispanic plaintiffs with respect to the Title VII claims.